THE PROTECTOR.

I. The doctrine declared in *Hanger* v. *Abbott* (6 Wallace, 532), that statutes of limitations do not run during the rebellion against a party residing out of the rebellious States, so as to preclude his remedy for a debt against a person residing in one of them, held applicable to the Judiciary Acts of 1789 and 1803, limiting the right of appeal from the inferior Federal courts to this court, to five years from the time when the decree complained of was rendered.

* Propeller Niagara v. Cordes et al., cited *supra*, 685.

2. The act of March, 1867, allowing appeals from Federal courts, in districts where the regular sessions of such courts subsequently to the rendering of the judgment had been suspended by rebellion, to be brought within one year from the date of the passage of the act, is an enabling act, not a restraining one.

THIS was a motion by *Mr. P. Phillips* to dismiss an appeal, on the ground that it was not brought within the time allowed by law. The case was this:

Freeborn, *a resident of New York*, had filed a libel against the ship Protector, in the District Court for the Southern District of *Alabama*, January 25th, 1859, for the price of certain necessary supplies and materials previously furnished to the ship in the port of New York. A decree dismissing the libel was pronounced in December, 1859. This decree was affirmed by Mr. Justice Campbell, in the Circuit Court, on the *5th of April*, 1861. The rebellion broke out soon after, lasting about four years. The appeal from the Circuit Court to this court was taken on the 28th day of July, 1869, more than eight years after the date of the decree appealed from.

By the twenty-second section of the Judiciary Act of 1789, it was enacted that writs of error should not be brought but within five years after rendering, or passing, the judgment or decree complained of, or, in case the person entitled to such writ be an infant, *feme covert, non compos mentis*, or imprisoned, then within five years, as aforesaid, exclusive of the time of such disability. By an act of March 3d, 1803, appeals were given, instead of writs of error, in cases of equity and admiralty jurisdiction, and it was provided that they should be subject to the same rules, regulations, and restrictions as were prescribed in law in cases of writs of error, and the same limitation applied, of course, to appeals as to writs of error.

The case, it was admitted, by Mr. Phillips, might, under certain views of what was decided in *Hanger* v. *Abbott*,\* be supposed to be taken out of the operation of these acts;

---

\* 6 Wallace, 532.

the rebellion having broken out so soon after the decree was affirmed in the Circuit Court. But he argued that the doctrine of *Hanger* v. *Abbott* was not rightly applicable to this special matter of practice, fixed, as it was, by positive statutes. Whichever way, however, that might be, the provisions made by an act of March 2d, 1867,* on the very subject of appeals during the rebellion, concluded, as he argued, the matter. That statute ran thus:

"Where any appeal or writ of error has been brought to the Supreme Court from any final judgment or decree of an inferior court of the United States for any judicial district in which, subsequently to the rendition of such judgment or decree, the regular sessions of such court have been suspended or interrupted by insurrection or rebellion, such appeal or writ of error shall be valid and effectual, notwithstanding the time limited by law for bringing the same may have previously expired; and in cases where no appeal or writ of error has been brought from any such judgment or decree, such appeal or writ of error *may be brought within* ONE YEAR *from the passage of this act.*"

Mr. Phillips contended that this statute had prescribed in a positive way, a limitation of one year from its enactment within which to bring up appeals situated as this one had been. The time given by the act was abundant, and there was no reason, since its passage, for resorting to the privileges—doubtful as applied to cases like this—of *Hanger* v. *Abbott*.

*Mr. F. S. Blount, contra.*

Mr. Justice BRADLEY, having stated the case, delivered the opinion of the court.

It is plain that by the literal terms of the act of 1789 the period of limitation had expired more than three years prior to the taking of this appeal. But this court has decided, in the case of *Hanger* v. *Abbott*, that a statute of limitations did not run, during the rebellion, against a party residing in

---

* 14 Stat. at Large, 545.

New Hampshire, so as to preclude his remedy for a debt against a person residing in Arkansas, one of the insurrectionary States. It is unnecessary to go over again the ground which was examined in that case. We are of opinion that the same law applies to this. And by throwing out of the eight years which elapsed between the decree and the appeal the four years and more during which the war continued, the time is reduced to a period of less than five years.

But it is urged that the act of March 2d, 1867, has regulated this subject, and has prescribed a limitation of one year from the passage of that act within which to bring all appeals and writs of error which were suspended or interrupted by the rebellion. We are of opinion that this statute is an enabling and not a restraining one; that it was not intended to take away any right of appeal, but to continue the right in cases where it had been lost. "Where the common law and a statute differ," says Blackstone, "the common law gives place to the statute; and an old statute gives place to a new one. . . But this is to be understood only when the latter statute is couched in negative terms, or where its matter is so clearly repugnant that it necessarily implies a negative."* Such repugnancy does not exist here. Many cases may be supposed, in which the right of appeal would be saved by the statute of 1867, which would not be saved by the act of 1789 and the operation of the common law rule followed in *Hanger* v. *Abbott*. If four years of the five elapsed before the war, the right of appeal would be saved by the act of 1867, but would be gone under the operation of the act of 1789, unless the appeal were brought before the passage of the former act. If Congress had intended to limit all appeals from courts in the insurrectionary States to one year from the passage of the law, it should have been so expressed in the act.

MOTION DENIED.

---

* 1 Commentaries, 89.