Warner WILLIAMS

v.

UNITED STATES of America et al.

No. 7661.

United States District Court,
E. D. Virginia, Norfolk Division.

Sept. 24, 1954.

Henry E. Howell, Jr., Norfolk, Va., for petitioner.

L. S. Parsons, Jr., U. S. Atty., and Charles R. Dalton, Jr., Norfolk, Va., for respondent.

BRYAN, District Judge.

The committee of Warner Williams, an incompetent, sues the United States, the owner of the S. S. Nelson W. Aldrich, a merchant vessel, and Moore-McCormack Lines, Inc. as the general operating agent of the ship, charging that their negligence occasioned and aggravated the mental breakdown of his ward, who had signed on as a messman. With regard to the United States, liability is asserted under the general admiralty law, the Jones Act, and the Suits in Admiralty Act, 46 U.S.C.A. §§ 688, 741 et seq.; the responsibility of Moore-McCormack is predicated on general admiralty doctrines only. The principal question in the claim against the United States is whether the 2-year limitation of the Suits in Admiralty Act was tolled by the insanity of the seaman, and as to Moore-McCormack whether the 1950 amendment of the Act, 46 U.S.C.A. § 745, precludes the right of action against the operating agent.

As the cause has been heard upon exceptions, the facts are taken as related in the libel. Its allegations are that Warner Williams was employed upon the Aldrich September 15, remained on board until November 12, and entered a State mental hospital of Virginia on November 20, 1951, where on the same day he was adjudged insane. His mental condition was precipitated and aggravated, it is charged, by respondents' neglect to furnish him with proper working and living conditions, and by their failure to have a physician to treat him aboard ship. Fault is laid to them also in that they permitted him to go ashore unattended, resulting in his incarceration by the local police. It is averred, too, that they did not thereafter provide him with adequate care, but instead they abandoned him to the custody of a public mental institution, the facilities of which are alleged to be under standard. Besides damages for these omissions, a claim for maintenance and cure is pressed.

The suit was commenced March 30, 1954, the day libelant was appointed committee. On October 7, 1953, notice of the claim had been given to the Department of Commerce. Obviously, as the exceptions point out, the suit was not brought within the 2-year period prescribed by the Suits in Admiralty Act.

Disagreeing with the libelant, the Court is of the opinion that the insanity of the claimant did not suspend the time limitation of the Act and that the suit against the Government is barred. The statute contains no saving clauses for disability of any kind. Sgambati v. United States, 1949, 2 Cir., 172 F.2d 297, certiorari denied 337 U.S.

938, 69 S.Ct. 1514, 93 L.Ed. 1743. Nor was access to the courts blocked by war as in Osbourne v. United States, 1947, 2 Cir., 164 F.2d 767, or by fraud as in Scarborough v. Atlantic Coast Line R. Co., 1949, 4 Cir., 178 F.2d 253, 15 A.L.R.2d 491. An additional factor active here, but not present in the Scarborough case, is the immunity of the United States to suit. It holds the claimant to strict compliance with the very terms of the exceptive statute. The rigidity of the immunity is relaxed during the two years only. Indulgences for infancy or insanity are not a matter of right; nor does their absence invalidate the statute. Vance v. Vance, 1883, 108 U.S. 514, 521, 2 S. Ct. 854, 27 L.Ed. 808. Congress advisedly grants or withholds these tolerances. As witness: additional time for these contingencies is not accorded by the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., but it is allowed plaintiffs in the Court of Claims. 28 U.S.C.A. §§ 2404, 2501.

While the claim now prosecuted against Moore-McCormack is not statutory and the only limitation is laches, discussion of its timeliness would be merely academic, for the claim itself is foreclosed by the 1950 amendment to the Suits in Admiralty Act. This amendment declares the cause of action afforded by the statute against the Government to be "exclusive of any other action by reason of the same subject matter against the agent * * * of the United States * * * whose act or omission gave rise to the claim". Libelant urges, and cites certain legislative history seemingly supporting his contention, that the amendment was not intended to merge, or otherwise preclude, recovery against the agent for the latter's own negligence. But the words of the statute express a broader purpose. Certainly on the present facts the language of the law is explicit in its denial to the libelant of a right of action against Moore-McCormack; it seems tailored to the present situation. Surely the omissions charged to Moore-McCormack occurred in its agency-ambit. The terms of the statute are so apposite and so uncompromising that they end discussion of the point.

With regard to maintenance and cure, libelant's proctor stated at the bar that this obligation was subsistent during the two years preceding the institution of this cause and has since continued; if so, it is to that extent a claim against the United States and enforceable in this suit.

Upon presentation, a decree will be entered disallowing all claims in the libel save that for maintenance and cure, and continuing the cause for hearing on the latter issue alone and between the libelant and the United States only, but dismissing the suit, with costs, as to Moore-McCormack.